**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**TYRELL MARRIA,**

      **Petitioner,**

**vs.**                                       **Case No. 4:12cv512-RH/CAS**

**STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY AMENDED § 2254 PETITION

On September 27, 2012, Petitioner Tyrell Marria, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and a supporting memorandum (Doc. 2). Petitioner subsequently, on December 21, 2012, filed an amended § 2254 petition (Doc. 7) and supporting memorandum (Doc. 8). On December 30, 2013, Respondent filed an answer, with exhibits. Doc. 20. Petitioner filed a reply on January 30, 2014. Doc. 22.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the amended § 2254 petition should be denied.

## State Court Proceedings

By information filed November 19, 2007, in the Second Judicial Circuit, Leon County, in case number 07CF3738, the State of Florida charged Petitioner Tyrell Marria with two counts of armed robbery with a firearm, first degree felonies punishable by life, in violation of sections 775.087 and 812.13(2)(a), Florida Statutes, in connection with events that took place on October 26, 2007. Doc. 20 Ex. A at 1. Marria proceeded to a jury trial on March 20, 2009, during which several witnesses testified. *Id.* Ex. C (trial transcript). Marria did not testify. *See id.* at 150-51. The jury found him guilty as charged on both counts. *Id.* Ex. A at 89-90, Exs. B, C. The jury specifically found, in both counts, that Marria actually possessed a firearm in the course of the offense. *Id.* Ex. A at 89-90. In a judgment and sentence rendered April 21, 2009, the judge adjudicated him guilty and sentenced him to twelve (12) years in prison on each count, to run concurrently, with a ten-year minimum mandatory, followed by three (3) years of probation. *Id.* Ex. A at 94-102; *see id.* Ex. D at 16 (transcript of sentencing hearing).

Marria appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D09-2030, and his attorney filed an initial brief pursuant to Anders v. California, 386 U.S. 738 (1967), asserting no good faith argument existed that reversible error occurred in the trial court. Doc. 20 Ex. E. On May 14, 2010, the First DCA affirmed the case without an opinion. Doc. 20 Ex. F; Marria v. State, 36 So. 3d 660 (Fla. 1st DCA 2010) (table). The mandate issued June 9, 2010. Doc. 20 Ex. G.

In the meantime, on February 3, 2010, Marria's counsel filed a Motion to Correct Sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). *Id.* Ex. H.  In an order rendered February 5, 2010, the state trial court granted to motion and directed that a corrected order of probation be prepared reflecting that Marria went to trial and did not enter a nolo contendere plea. *Id.* Ex. I.

On May 19, 2011, Marria, proceeding pro se, filed a Petition for Writ of Habeas Corpus in the First DCA, asserting ineffective assistance of appellate counsel. *Id.* Ex. J. The First DCA denied the petition on the merits on June 10, 2011. *Id.* Ex. K.  Marria sought rehearing, which the First DCA denied on July 18, 2011. *Id.* Exs. L, M.  Marria then filed a notice to invoke the discretionary jurisdiction of the Florida Supreme Court and filed a jurisdictional brief. *Id.* Exs. N, O.  On August 26, 2011, the Florida Supreme Court dismissed the case for lack of jurisdiction. *Id.* Ex. P.

On August 25, 2011, Marria filed, in the state trial court, a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. *Id.* Ex. Q at 1-35. On January 18, 2012, the state trial court summarily denied the motion. *Id.* at 39-173.

Marria appealed the denial of his Rule 3.850 motion to the First DCA and filed an initial brief in the case, assigned number 1D12-554. *Id.* Ex. R.  The State filed a notice that it would not file an answer brief. *Id.* Ex. S.  The First DCA affirmed the case per curiam without a written opinion on June 19, 2012. *Id.* Ex. T; <u>Marria v. State</u>, 91 So. 3d 138 (Fla. 1st DCA 2012) (table).  The mandate issued July 17, 2012.  Doc. 20 Ex. U.

As indicated above, on September 27, 2012, Marria filed a § 2254 petition in this

Court, along with a supporting memorandum.  Docs. 1 and 2.  He subsequently filed an

amended § 2254 petition and memorandum.  Docs. 7 and 8.  He raises five grounds, all

alleging ineffective assistance of counsel (IAC):

> (1) IAC – Closing Argument:  Trial counsel failed to object to the
> prosecutor's improper and highly prejudicial closing argument statement
> which mislead the jury: "You're going to have to go back there and find
> this Defendant guilty as charged of both counts of robbery in this case.
> There's no other verdict you can come back with."  Doc. 7 at 4.

> (2) IAC – Firearm Evidence: Trial counsel failed to object to the
> introduction into evidence of the assembled firearm and a photograph of
> the assembled firearm, where the firearm was tampered with and the
> State failed to establish chain of custody.  *Id.* at 8.

> (3) IAC – Motion to Suppress:  Trial counsel failed to file a motion to
> suppress the firearm based on the State's failure to establish a proper
> chain of custody.  *Id.* at 10.

> (4) IAC –  Motion to Dismiss:  Trial counsel should have filed a motion to
> dismiss, where Officer McLeod, the primary officer who wrote the police
> report, referred to the contents of a "be on the lookout" (BOLO) from a key
> witness, Laucirica, that identified Marria as the robber but did not testify
> and was not available to be cross-examined by the defense.  *Id.* at 10-11.

> (5) IAC –  Jurisdiction:  Trial counsel failed to file a motion to dismiss the
> charges of armed robbery with a firearm where the trial court lacked
> jurisdiction to try Marria.  *Id.* at 12-13.

Respondent has filed an answer, with exhibits.  Doc. 20.  Marria has filed a reply.  Doc.

22.


## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See* Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker, 633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated on the merits in State court proceedings,' § 2254(d), an additional restriction applies." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant relief unless the state court's adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 131

S.Ct. at 1398 (quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011), and <u>Woodford</u>

<u>v. Visciotti</u>, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that

was before the state court that adjudicated the claim on the merits."  <u>Cullen</u>, 131 S.Ct.

at 1388.

 Also relevant here, in <u>Strickland v. Washington</u>, the U.S. Supreme Court adopted

a two-part test for IAC claims:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.

466 U.S. 668, 687 (1984).  To demonstrate ineffectiveness, a "defendant must show

that counsel's performance fell below an objective standard of reasonableness."  *Id.* at

688.  To demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id.* at 694.  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes,

importantly, "[t]he question 'is not whether a federal court believes the state court's

determination' under the <u>Strickland</u> standard 'was incorrect but whether that

determination was unreasonable – a substantially higher threshold.'"  <u>Knowles v.</u>

<u>Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schiro v. Landrigan</u>, 550 U.S. 465, 473

(2007)).  "And, because the <u>Strickland</u> standard is a general standard, a state court has

even more latitude to reasonably determine that a defendant has not satisfied that

standard." *Id.* It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." *Id.*

## Ground 1:  IAC – Closing Argument

In his first ground, Petitioner Marria asserts his trial counsel rendered ineffective assistance by failing to object to the prosecutor's allegedly improper and highly prejudicial closing argument statement which mislead the jury: "You're going to have to go back there and find this Defendant guilty as charged of both counts of robbery in this case.  There's no other verdict you can come back with."  Doc. 7 at 4.  Marria raised this argument as the third claim in his Rule 3.850 motion filed in state court.  Doc. 20 Ex. Q at 8-9.  The state post-conviction trial court denied the claim, making the following findings:

> Defendant claims counsel was ineffective for failing to object to improper remarks made by the prosecutor during closing statements. Even assuming the remarks were inappropriate, in light of the overwhelming evidence against Defendant, there is no reasonable probability that a successful objection would have made any difference in the jury's determination of guilt. *Exh. 1.*

*Id.* at 40-41.  On appeal, the First DCA affirmed without an opinion.  These rulings are entitled to AEDPA deference and review is limited to the record before the state court. *See* 28 U.S.C. § 2254(d); <u>Cullen</u>, 131 S. Ct. at 1402; <u>Richter</u>, 131 S. Ct. at 784-85; <u>Wright</u>, 278 F.3d at 1255.

The record supports the findings of the state post-conviction trial court.  In particular, just prior to the closing arguments, the trial judge had instructed the jury and concluded with the following:

> At this point in time, the attorneys will give their final arguments.  Please
> remember that what the attorneys say is not evidence or your instructions
> on the law.  However, do listen closely to their arguments. . . .

Doc. 20 Ex. C at 170.  During closing argument, the prosecutor reviewed the State's

evidence (summarized in the following paragraphs, *infra*).  *Id.* at 170-81.  At the

conclusion of her closing, she stated:

> You've got everything you need, ladies and gentlemen, in this evidence.
> The videos, they speak everything in this case.  You're going to have to go
> back there and find this defendant guilty as charged of both counts of
> robbery in this case.  There's no other verdict you can come back with.

*Id*. at 180-81.  The prosecutor's unobjected-to comments do not appear improper as

they appropriately ask the jury to determine the credibility of the witnesses' testimony,

evaluate the evidence presented, and determine, as the finder of fact, what happened in

this case.  *See, e.g.*, <u>Dunlap v. State</u>, 21 So. 3d 873, 877 (Fla. 4th DCA 2009) (holding

trial court did not abuse discretion in denying motion for mistrial where prosecutor asked

the jury to "make a collective decision on what the truth is" and explaining, "It was not

improper to utter the word 'truth' in the context of the jury's role as factfinder, particularly

where, as here, the comment was immediately followed by a clear explanation of the

State's burden of proof in the defense opening statement, and the jury was properly

instructed on the State's burden of proof by the judge at the conclusion of the case.");

<u>Steurer v. Crews</u>, No. 4:10cv383-RH/EMT, 2013 WL 4096120 at *21-22 (N.D. Fla. Aug.

11, 2013) (order adopting report and recommendation which, among other grounds,

addressed claim asserting IAC for failing to object to prosecutor's allegedly improper

closing argument that asked jury "to render a verdict that finds him guilty as charged . . .

. Render a verdict that speaks the truth," and explained counsel was not deficient for failing to object because the comments were not improper:  "[T]he prosecutor's comments in the instant case properly commented on the jury's obligation to determine the credibility of the witnesses' testimony and did not suggest any improper basis for reaching a verdict.  There was no suggestion that the jurors' determination of who was telling the truth should be the sole basis for the jury's verdict; instead the prosecutor asked the jury to find Petitioner guilty 'because the evidence and the law and your common sense require it.'").  *See also* <u>Griffin v. State</u>, 866 So. 2d 1, 16 (Fla. 2003) (explaining that, in closing argument, prosecutor may "review the evidence and . . . explicate those inferences which may reasonably be drawn from the evidence"). *Cf.* <u>Northard v. State</u>, 675 So. 2d 652, 653 (Fla. 4th DCA 1996) (reversing and remanding for new trial where prosecutor's objected-to comments in opening statement and closing argument that jury "deliberate and come back with a verdict, a verdict that simply reflects the truth; that the defendant in this case was caught red-handed" and "[i]f you believe the defendant's events the police cannot possibly be telling you the truth . . . in order to find him not guilty you're going to have to believe that the defendant was telling the truth and the officer was lying" were "impermissible because [they] improperly asked the jury to determine who was lying as the test for deciding if appellant was not guilty" and invited "the jury 'to convict the defendant for a reason other than his guilt of the crimes charged'" (quoting <u>Bass v. State</u>, 547 So. 2d 680, 682 (Fla. 1st DCA 1989))).

In addition, the record supports the state court's finding that, even assuming the prosecutor's comments were improper, given the overwhelming evidence against Marria, there is no reasonable probability that a successful objection would have made a difference in the jury's verdict.  In federal habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  The comments must have been improper and have rendered the trial fundamentally unfair.  United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991).

In this case, during the trial, the State presented eight witnesses and several exhibits.  First, Marnise Butts, assistant manager of Billi's Minit Market, testified that she was working on October 26, 2007, when, around 6 p.m., a "regular customer" came in the store, she recognized his face, he went to the beer cooler, and "[t]hen all of a sudden, he come around the corner with a piece of cloth over his face, came up there and robbed us."  Doc. 20 Ex. C at 18-22.  She testified that "the [piece of white] cloth he had over his face is what he held his braids back with" and "[i]t was like up here holding his braids up."  *Id.* at 22; *see id.* at 43.  Ms. Butts further described the robbery:

> He tells my coworker, which I couldn't hear, but I was just looking like, what's – I can't believe this is happening, he's doing this.  And I don't know what he said to my coworker, but then I guess he got agitated because he got loud. . . . He said, "You think I'm fucking playing?  Give me the money."  And then he put the gun to this head, swung the gun around towards me, and then swung it back towards him.  By the time he went to my coworker, I pulled the money out of my drawer and threw it on the counter.

*Id.* at 23.  She identified Marria as the robber, with no doubt in her mind; she recognized

him as depicted in State's Exhibit 2 and she identified him in court.  *Id.* at 20, 35, 37.

She testified that he wore gloves during the robbery and she recognized State's Exhibit

6 as gloves that looked like the gloves worn during the robbery.  *Id.* at 24.  She

identified the brown plastic Winn-Dixie grocery bag the robber put the money in, which

the State introduced as Exhibit 5.  *Id.* at 23-24, 26; *see id.* at 47, 51.  She recognized a

photograph, State's Exhibit 4, depicting the gun used in the robbery.  *Id.* at 25; *see id.* at

48 (She testifies, on cross, "Ninety-nine percent sure that's the gun.").  She also testified

that the surveillance recording from October 26, 2007, was fair and accurate; that

recording was admitted into evidence as State's Exhibit 1 and published to the jury.  *Id.*

at 27-35.

The State next called Ms. Butts' coworker, Saleh Mustafa, as a witness.  *Id.* at

52-53.  Mr. Mustafa described the robbery:

> Q All right.  So this man comes behind the register.  What happens next?
>
> A  He come behind, behind me and then he like, he got, I'll never forget,
> he got a Winn-Dixie bag.  So he open it.  And then I was looking at him
> like what's happening.  And then Marnise told me like go ahead and open.
> Then he pulled the gun and put it like in my head, facing my head.  And
> that's when I opened the cash register.  He took the money and left.
>
> Q Okay.  And did you observe whether or not he robbed the other clerk in
> the store, Ms. Butts?
>
> A Yeah, yeah.  He put – he faced the gun at her and everything.  He face
> a gun to my head first and then he change it and face the gun to Marnise.

*Id.* at 56.  He testified that the robber "came behind me and with a piece of clothes in his

mouth," was a black male with long hair, who wore white gloves on his hands.  *Id.* at 54,

57.  He identified the gloves and also testified the gun, State's Exhibit 3, looked like the gun used in the robbery.  *Id.* at 57, 58.

The State then called Officer Michael McLeod, with the Tallahassee Police Department.  *Id.* at 62.  Officer McLeod testified that he was working as a patrol officer and responded "to a call-out on a robbery at Bill's Minit Mart, located on South Magnolia," on October 26, 2007.  *Id.* at 63.  He arrived at the store, secured the crime scene, and spoke with the victims and witnesses.  *Id.* at 64.  He took a statement from the store clerks and one of the customers who had called 911.  *Id.* at 64-65.  He was at the store "[m]aybe 20 minutes" or "[maybe a little longer," and then he transported the store clerks to the location of the traffic stop, where the suspects had been located in a vehicle.  *Id.* at 65-66.  The suspects were separated and the officers conducted a show-up.  *Id.* at 67.  Both clerks advised him they were "a hundred percent positive" one of the suspects was the robber.  *Id.* at 68; *see id.* at 69.

The State called Officer Scott Ault, with the Tallahassee Police Department.  *Id.* at 71.  Officer Ault testified he was working as a patrol officer on October 26, 2007, and conducted a traffic stop of a white Chevrolet Monte Carlo in the area of Orange Avenue and Pontiac Drive because "[w]e had a report that the vehicle was just involved in a robbery."  *Id.* at 72.  Petitioner Marria was in that vehicle, along with another person, Mr. Walker.  *Id.* at 76-78; *see id.* at 105.  The officers found a gun, State's Exhibit 3, in the vehicle.  *Id.* at 93.  The officer testified that Marria had a black holster in his waistband and identification in his wallet, including a concealed weapons permit.  *Id.* at 96.  Gloves were also found, as well as a Winn-Dixie bag containing cash and coins.  *Id.* at 96, 98-

99.  Officer Ault identified Marria as the individual he arrested that day.  *Id.* at 100.  A

video recording of the traffic stop, taken from the camera system in Officer Ault's car,

was played during Officer Ault's testimony and admitted as State's Exhibit 10.  *Id.* at 73-

74, 82-93.

The State called Officer Robert Bascom, with the Tallahassee Police

Department.  *Id.* at 107.  Officer Bascom testified he was involved in the traffic stop with

Officer Ault.  *Id.* at 108.  Among other things, he testified that when the firearm was

located in the vehicle, it was disassembled.  *Id.* at 110-11.

The State called Sara Hill, who works as a forensic technologist for the Florida

Department of Law Enforcement in the firearms section.  *Id.* at 115-16.  Ms. Hill tested

State's Exhibit 3, the firearm recovered from Marria's vehicle, and described it as a

Smith and Wesson 9 millimeter caliber pistol, model SW9VE.  *Id.* at 117.  She testified

the firearm is in working condition.  *Id.* at 118.

The State called April Doubrava, an investigator with the Tallahassee Police

Department.  *Id.* at 119-20.  On October 26, 2007, Investigator Doubrava was the on-

call investigator for the Robbery Task Force.  *Id.* at 120.  She responded to the station

after being called by Officer Bascom.  *Id.*  at 120-21.  She informed Marria of his Miranda

rights and he signed the preprinted statement of rights form.  *Id.* at 121.  She then

interviewed Marria and the interview was videotaped.  *Id.* at 126-27.  She asked him

about the gun found in the car and he said it was his and that he had a permit for it.  *Id.*

at 128.  She asked him about the other items found in the car, and he denied

knowledge of the Winn-Dixie bag and gloves.  *Id.* at 128-29.  He changed his answer

about who had been driving the car and "eventually said that his friend Calvin Walker
was the driver and that he switched seats with him after the stop" because "Walker's
license wasn't good."  *Id.* at 130.  He denied any knowledge of the armed robbery at the
Minit Mart but as Investigator Doubrava "was getting up to leave, he said, well, if I did do
it, I would be sorry."  *Id.*

The State called Officer Reinaldo Roa, a patrol officer with the Tallahassee
Police Department.  *Id.* at 135.  Officer Roa participated in the traffic stop and search of
Marria's vehicle.  *Id.* at 136.  He conducted "a secondary search of the vehicle before
the vehicle was impounded and collected" and he "located a Winn-Dixie bag that was
tan in color that was stuffed in between the front end of the center console and the
firewall inside the dashboard."  *Id.* at 137.  Inside the bag, marked as State's Exhibit 5,
he found currency, "an extensive amount of change," and a piece of a white shirt,
marked as State's Exhibit 7.  *Id.* at 127-38.

The State called Officer Ault back to the witness stand.  *Id.* at 144.  Officer Ault
testified that the Winn-Dixie bag contained $787.60.  *Id.* at 145.

Based on the foregoing, Marria has not shown the state court's rejection of his
claim was either (1) contrary to, or involved an unreasonable application of, clearly
established U.S. Supreme Court precedent, or (2) based on an unreasonable
determination of the facts in light of the evidence presented in the state court
proceeding.  *See id.*; 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

**Ground 2**: IAC – Firearm Evidence

In his second ground, Marria asserts his trial counsel rendered ineffective

assistance by failing to object to the introduction into evidence of the assembled firearm

and a photograph of the assembled firearm, where the firearm was tampered with and

the State failed to establish chain of custody.  Doc. 7 at 8.  Marria raised this argument

as the first claim in his Rule 3.850 motion.  Doc. 20 Ex. Q at 5-6.  The state post-

conviction trial court denied the claim, making the following findings:

> Defendant claims counsel was ineffective for failing to object to the
> admission of a handgun and photo of same where there was evidence
> that the firearm had been tampered with, and the State failed to establish
> a chain of custody.  Specifically, he takes issue with the fact that the
> firearm was disassembled when the police found it, and reassembled by
> an unknown, non-testifying officer.

> Proof of a chain of custody is required by section 90.901, Florida
> Statutes.  That section provides that "[a]uthentication or identification of
> evidence is required as a condition precedent to its admissibility. The
> requirements of this section are satisfied by evidence sufficient to support
> a finding that the matter in question is what its proponent claims."  Put
> another way, chain of custody evidence establishes "'a connection
> between the evidence offered and the relevant facts of the case.'" *State v.
> Hampton*, 44 So. 3d 661, 664 (Fla. 2d DCA 2010) (*quoting* William R.
> Eleazer & Glen Weissenberger, *Florida Evidence-2004 Courtroom Manual*
> 685 (LexisNexis 2004)).

> When making the connection between the evidence offered at trial and
> the evidence originally seized, the State is not required to establish
> evidence showing the entire chain of custody, unless there is evidence of
> tampering.  *Dodd v. State*, 537 So. 2d 626, 627 (Fla. 3d DCA 1988).
> Evidence of tampering is established by conflicting descriptions of the
> evidence, or gross, physical discrepancies between the evidence as it
> moved through the chain.  *See Taplis v. State*, 703 So. 2d 453, 454 (Fla.
> 1997) (*citing Dodd*, 537 So. 2d at 628).  Once evidence of probable
> tampering is produced, the onus is on the proponent of the evidence at
> issue to establish a proper chain of custody, or otherwise show that
> tampering did not occur.  *Taplis*, 703 So. 2d at 454.

> Here, there is no evidence of tampering.  All officers involved testified that the handgun found in Defendant's car was in a state of disassembly when it was removed, and that it was immediately reassembled on-scene.  *Exh. 1 – Jury Trial, pp. 93-98, 102-03, 110-11.* They also confirmed that the handgun was the same firearm introduced at trial, and accurately represented in the photograph at issue.  *Id.* Furthermore, both victims testified that the handgun and its attendant photograph were, or accurately represented, the firearm used by Defendant to threaten them during the Robbery.  *Exh. 1, pp. 25-26, 48, 58-59.*  Accordingly, there was no deficiency in, or prejudice from, counsel's decision not to bring the suggested objection.

*Id.* at 39-40.  On appeal, the First DCA affirmed without an opinion.  These rulings are

entitled to AEDPA deference and review is limited to the record before the state court.

*See* 28 U.S.C. § 2254(d); <u>Cullen</u>, 131 S. Ct. at 1402; <u>Richter</u>, 131 S. Ct. at 784-85;

<u>Wright</u>, 278 F.3d at 1255.

The record supports the findings of the state post-conviction trial court.  In

particular, Officer Ault testified at trial that the gun appeared to be in the same or

substantially the same condition at trial as it was when he impounded it after the vehicle

search.  Doc. 20 Ex. C at 95.  He testified that it did not appear to have been tampered

with in any way.  *Id.* at 95-96.  He also testified that the gun was disassembled when it

was found and the officers had to put it back together; they reassembled it at the scene.

*Id.* at 97-98; *see id.* at 102-03.  Officer Bascom likewise testified that when the firearm

was located in the car, it was dissembled.  *Id.* at 111.

Further, as the state court found, the store clerks testified that the gun,

introduced at trial as Exhibit 3, was the same as, or looked like, the one the robber

used.  *Id.* at 25, 48; 58.  Ms. Butts also identified a photograph of the gun, Exhibit 4.  *Id.*

at 25.

Given the officers' and victims' descriptions of and identification of the gun used in the robbery and recovered in Marria's vehicle, defense counsel did not render ineffective assistance by not objecting as argued by Marria.  Marria has not shown the state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See id.*; 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## Ground 3: IAC – Motion to Suppress

In his third ground, Marria asserts his trial counsel rendered ineffective assistance by failing to file a motion to suppress the firearm based on the State's failure to establish a proper chain of custody.  Doc. 7 at 10.  Marria raised this argument as the second claim in his Rule 3.850 motion.  Doc. 20 Ex. Q at 6-8.  The state post-conviction trial court denied the claim, finding it "fails for the reasons already discussed" in the explanation of the denial of the first claim in the Rule 3.850 motion, Ground 2, *supra.  Id.* at 40.  The state court's rulings, affirmed on appeal without opinion, are entitled to AEDPA deference and are supported by the record.  *See* 28 U.S.C. § 2254(d); Harrington, 131 S.Ct. at 784-85; Wright, 278 F.3d at 1255.

As explained above, in the analysis of Ground 2, *supra*, the record supports the state court's finding of no evidence of tampering with the firearm.  Therefore, defense counsel cannot be deficient for failing to move to suppress the firearm on that basis.

Marria has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## Ground 4: IAC – Motion to Dismiss

In his fourth ground, Marria asserts his trial counsel rendered ineffective assistance by not filing a motion to dismiss where Officer McLeod, who wrote the police report, referred to the contents of a BOLO ("be on the look out") from a key witness, "Laucirica," that identified Marria as the robber but who did not testify and was not available to be cross-examined.  Doc. 7 at 10-11.  Marria raised this argument as the fourth claim in his Rule 3.850 motion.  Doc. 20 Ex. Q at 9-10.  The state post-conviction trial court denied the claim and made findings:

> Defendant claims counsel was ineffective for failing to move for the dismissal of both charges after witness McLeod referred to the contents of a BOLO from a witness who identified Defendant as the robber, when that witness did not testify and was not subject to cross-examination.  A motion for dismissal on those grounds would have failed, and consequently, no deficiency can be found in counsel's decision not to bring one.  Even assuming a successful motion to suppress was made, the testimony at issue was so limited and insignificant that its removal would have had no impact.  *Exh. 1.*

*Id.* at 41.  On appeal, the First DCA affirmed without an opinion.  These rulings are entitled to AEDPA deference and review is limited to the record before the state court. *See* 28 U.S.C. § 2254(d); Cullen, 131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright, 278 F.3d at 1255.

The record supports the findings of the state post-conviction trial court.  The

testimony Marria takes issue with appears to be the following portion of the trial

testimony of Officer McLeod:

> Q Okay.  So were you working as a patrol officer on October 26th of the
> year 2007?
>
> A Yes, ma'am.
>
> Q And did you respond to a call-out on a robbery at Bill's Minit Mart,
> located on South Magnolia?
>
> A Yes, ma'am.
>
> Q And without getting into what was said, was there a BOLO that had
> gone out with a description of a vehicle?
>
> A As I was being dispatched, dispatch provided notes that they had from
> the call as I was en route, yes, ma'am.
>
> Q So there was a description of a vehicle out there that the robbers had
> left the store; is that correct?
>
> A Yes, ma'am.
>
> Q All right.  And where were you responding to?
>
> A Where?
>
> Q Where.  I'm sorry.
>
> A Bill's Minit Mart on South Magnolia.
>
> Q So you actually went to the store?
>
> A Yes, ma'am.
>
> Q All right.  Did you observe any vehicle matching the description of the
> BOLO on your way to the store?
>
> A I did not.

Q Okay.  So you just went directly to the store; is that correct?

A As I was en route to the store, I was flagged down by motorists.

Q Okay.  And when you say, you know, flagged down, are these vehicles that are stopped somewhere?

A If you're familiar with Magnolia Drive, it runs east and west and then turns north and south.  I was in the east-west part approaching the curve to go north and had – a vehicle stopped in the oncoming direction.  A man was waving his arms so I stopped.  He said the store just got robbed up the street.  I said, yeah, that's where I'm going.  And he provided a description of the vehicle.  He said the vehicle – the guys that did it just went, just turned down Jim Lee or Pontiac.  So then I provided that information over the radio and I continued to the store.

Q So then you continued to the store.

A (Nodding head affirmatively)

Q And when you got to the store, what did you do?

A I secured the crime scene, spoke with witnesses, victims.

Doc. 20 Ex. C at 63-64.  Officer Ault testified the he stopped the suspect's vehicle:

Q And were you working in your capacity as a patrol officer on October 26th of the year 2007?

A Yes, I was.

Q And in the evening at approximately 6:00 p.m., somewhere in there, did you conduct a traffic stop of a white Chevy Monte Carlo in the area of Orange Avenue and Pontiac Drive?

A Yes.

Q And why did you conduct a stop of that vehicle?

A We had a report that the vehicle was just involved in a robbery.

*Id*. at 72.

As the state court found, even excluding the testimony with which Marria takes issue, given the other evidence presented, the result would not have changed. As set forth above, the store clerks positively identified Marria as the robber, and the State presented video evidence of the robbery and the stop of Marria's vehicle.

Marria has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

## <u>Ground 5</u>: IAC – Jurisdiction

In his fifth ground, Marria asserts defense counsel rendered ineffective assistance by not filing a motion to dismiss the charges of armed robbery with a firearm where the trial court lacked jurisdiction to try Marria. Doc. 7 at 12-13. In his supporting facts, Marria states:

> In its felony information filed by the prosecution, it certified that "testimony was received under oath from the material witness or witnesses, for the offense pursuant to Fla.R.Crim.P. Rule 3.140(g)." This testimony and certification was made under oath by Assistant State Attorney Andrei Antohi, and notarized by Sharon Y. Williams. The State did not have, nor has it received any sworn testimonies from any said witness or material witnesses on or before the date of the felony information, nor has it discovered that fact to the defense at any time. Furthermore, Defense Counsel failed to verify the sufficiency of the State facts as stated. It is the fact that essentially established the factual basis for the charges, and subsequently give the Court jurisdiction over the subject matter and the accused.

*Id.* at 13.  In response to the question whether he raised this ground in state court, he

checked "yes" and explained:

> Marria raised the argument in his 3.850 motion, but as a non-*juris prudens* litigant, he may have failed to correctly articulate the error.  Marria brought the "basic" defect of the charging information to the attention of his Counsel before trial, but Counsel insisted that it was not a problem.  Marria argued, incorrectly as it may, that the information did not name him on each count, when the proper argument should have been the lack of any sworn testimonies where obtained, as certified to under oath by the prosecutor, that essentially would have put the information as stated into question.  Considering that the State predicated its "facts" upon having received such testimonies as a condition to the truthfulness of its facts.  Therefore, failure to raise that argument or preserve it for appeal constituted ineffective assistance of counsel, and aside from factually of the information, the rule essentially prevents the Defendant from raising or questioning the State's information once he entered a plea or went to trial.  That prejudiced Marria's right to be tried upon verified and accurate information.

*Id.* at 13-14.  In his supporting memorandum, Marria further explains:

> In his Ground Five, Marria argued, wrongly, that because his name was not on each count in the felony information, the court lacked jurisdiction to try him.  That argument was uninformed by a *pro se* layman.  The proper argument however, should have been:  did the State prosecutor receive sworn under oath testimonies from witness and material witnesses in support, as they certified under oath?  The simple and short answer is no, they did not.  Marria is not questioning the contents of the information, or who may have signed it, but the mere fact that it was not verified by his counsel at any time, and mostly, the State's own certification under oath that they have received said testimonies when in fact they never did is indeed a "false testimony" by a State actor while acting under color of State law.

Doc. 8 at 10.

As both Marria and Respondent indicate, Marria did not present in state court,

and thus did not exhaust, the specific ground he now raises.  To the extent Marria

challenges the state court's denial of the claim he did raise in his Rule 3.850 motion –

that the information did not specifically name him – the record supports the state court's

findings.

In denying that claim, the state post-conviction court found:

Defendant claims counsel was ineffective for failing to move for the dismissal of both charges, due to the fact that the charging information did not identify him as the defendant in each charge.  This claim is frivolous.  The information clearly incorporates the Defendant into each charge by an initial reference to "the above-named defendant(s)."  *Exh. 2 – Information*.

Doc. 20 Ex. Q at 41.  The record reflects that in the information, filed November 19,

2007, the State of Florida charged Marria:

COUNT I: On October 26, 2007, did unlawfully take U.S. Currency or other property from the person or custody of Saleh R. Mustafa, with intent to either permanently or temporarily deprive the person or the owner of the money or property, and in the course of the taking used force, violence, assault, or putting in fear, and in the course of committing the robbery carried and actually possessed a firearm, contrary to Sections 775.087 and 812.13(2)(a), Florida Statutes.

COUNT II:  On October 26, 2007, did unlawfully take U.S. Currency or other property from the person or custody of Marnise Butts, with intent to either permanently or temporarily deprive the person or the owner of the money or property, and in the course of the taking used force, violence, assault, or putting in fear, and in the course of committing the robbery carried and actually possessed a firearm, contrary to Sections 775.087 and 812.13(2)(a), Florida Statutes.

Doc. 20 Ex. A at 1.  The information clearly charges "the above-named defendant" with

two counts of armed robbery and identifies the Petitioner, Tyrell R. Marria, as the

Defendant in the case.  *Id.*  The information includes, in the caption, the Petitioner's

name, race and gender, date of birth, and Social Security number.  *Id.*  The information

thus identified Marria as the defendant, set forth the charged crimes and essential facts,

cited the statutes he allegedly violated, and was not "so vague, indistinct, and indefinite

as to mislead the accused and embarrass him . . . in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense."  Fla. R. Crim. P. 3.140(o); *see* Carbajal v. State, 75 So. 3d 258, 262-63 (Fla. 2011) (citing Rule 3.140(o) and explaining that "while a charging instrument is essential to invoke the circuit court's subject matter jurisdiction, 'defects in charging documents are not always fundamental where the omitted matter is not essential, where the actual notice provided is sufficient, and were all the elements of the crime in question are proved at trial'" (quoting State v. Gray, 435 So. 2d 816, 818 (Fla. 1983))).

Therefore, it appears that even if defense counsel had filed a pre-trial motion to dismiss, with the argument urged by Marria, the trial court would have denied the motion.  Counsel is not ineffective for failing to raise or preserve a meritless issue.  *See, e.g.*, Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989).

Marria has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.


## Conclusion

Based on the foregoing, Petitioner Tyrell Marria is not entitled to federal habeas relief.  The amended § 2254 petition (Doc. 7) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  See Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner Marria's amended § 2254 petition (Doc. 7).  It is further **RECOMMENDED** that a

certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

   **IN CHAMBERS** at Tallahassee, Florida, on June 16, 2015.

        S/  Charles A. Stampelos   
        **CHARLES A. STAMPELOS**
        **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

   **A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**